**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

VIVEK SHAH
    Appellant,

      vs.

TALENTBRIDGE, INC.
    Appellee.

9th Cir. Case No. 26-3514

District Court Case No.
2:26-cv-00222-AH-SSC

**APPELLANT'S INFORMAL OPENING BRIEF**

*(attach additional sheets as necessary, up to a total of 50 pages including this form)*

**JURISDICTION.** This information helps the court determine if it can review your case.

1.    Timeliness of Appeal:

    a.  What is the date of the judgment or order that you want this court to review? March 24, 2026, April 17, 2026, April 21, 2026, May 28, 2026

    b.  Did you file any motion, other than for fees and costs, after the judgment was entered? Answer yes or no: No

        • If you did, on what date did you file the motion? _____

        • For prisoners or detainees, what date did you give the motion to prison authorities for mailing? _____

        • What date did the district court or bankruptcy appellate panel (BAP) decide the motion that you filed after judgment? _____

    c.  What date did you file your notice of appeal? May 28, 2026

        • For prisoners or detainees, what date did you give your notice of appeal to prison authorities for mailing? _____

9th Cir. Case No. 25-6713                                    Page 2

**FACTS.** Include all facts that the court needs to know to decide your case.

2.      What are the facts of your case?

I used TalentBridge's candidate-facing job-search website to look for work for myself in and around Los Angeles. I ran searches similar to "felony-friendly jobs" and "jobs no background check" and selected Los Angeles in the site's city filter. Before searching, the site showed a cookie banner with "Customise," "Reject All," and "Accept All." I clicked "Reject All," which I understood to mean non-essential third-party tracking would not occur.

Despite that, when I ran my searches, TalentBridge caused my search-bearing page URL — the jobs URL containing the "_search=" parameter with the contents of my search — to be sent in outbound, cross-origin requests to third parties, including Google Analytics and UserWay-associated infrastructure. These transmissions happened contemporaneously with my searches and results page. They carried the contents and meaning of my searches plus contextual data (page viewed, timestamp, browser/session/referrer information) sufficient to tie the disclosed search to my browser, device, and session. I observed these network requests using browser developer tools.

My searches conveyed private, stigmatizing information about my employment circumstances — that I was concerned about criminal-history screening and background checks in my own job search. I did not intend to share that with analytics vendors, advertisers, or trackers, and I had affirmatively rejected such tracking. Each separate search submission triggered one or more separate third-party acquisitions. I made multiple searches and pleaded sixteen separate violations (Counts One through Sixteen). The exact number of network calls, recipients, and discrete acquisitions is uniquely within TalentBridge's possession, custody, and control.

**PROCEEDINGS BEFORE THE DISTRICT COURT OR THE BAP.** In this section, we ask you about what happened before you filed your notice of appeal with this court.

3.      What did you ask the district court or the BAP to do—for example, did you ask the court to award money damages, issue an injunction, or provide some

9th Cir. Case No. 25-6713                                              Page 3

other type of relief?

On my CIPA claim I asked for: statutory damages of $5,000 per violation under Cal. Penal Code § 637.2; preliminary and permanent injunctive relief barring TalentBridge from transmitting users' search communications (including search-bearing URLs or equivalent page-state data) to third parties without clear prior notice and valid prior consent; public and private injunctive relief requiring TalentBridge to disable, reconfigure, or sanitize its third-party code so search contents are not disclosed without consent; declaratory relief that its conduct violated § 631(a); costs; and any further relief the Court deemed just and proper.

I also asked the Court to: (1) compel TalentBridge to participate in a Rule 26(f) conference; (2) exercise its inherent authority to stop TalentBridge from litigating through stale criminal-history allegations, "serial litigant" and "extortion" rhetoric, and ten unrelated complaints, and to confine future filings to relevant matter; and (3) sanction TalentBridge under Rule 11 for filings that were factually false and legally frivolous.

4.    What legal claim or claims did you raise in the district court or at the BAP?

One claim: violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a), based on the unauthorized reading and learning of the contents of my search communications while in transit, and on TalentBridge's aiding, agreeing with, and enabling third parties to do so. I pleaded the claim as Counts One through Sixteen for sixteen separately intercepted search submissions, with statutory damages under § 637.2.

5.    **Exhaustion of Administrative Remedies.** For prisoners, did you use up all administrative remedies for each claim before you filed your complaint in the district court? If you did not, please tell us why.

N/A

**PROCEEDINGS BEFORE THE COURT OF APPEALS.** In this section, we ask you about issues related to this case before the court of appeals and any previous cases you have had in this court.

9th Cir. Case No. 25-6713                                                      Page 4

6.   What issues are you asking the court to review in this case? What do you think the district court or the BAP did wrong?

**Standard of Review**. The dismissal of my FAC under Rule 12(b)(1) — both for lack of Article III standing and for the amount in controversy on a facial attack — is reviewed *de novo*, accepting my allegations as true and drawing all reasonable inferences in my favor. The denial of leave to amend on futility grounds is also reviewed *de novo*, under the same standard as the Rule 12 ruling. Whether my inherent-authority and Rule 11 motions were moot is a question of law reviewed *de novo*. The denials of reconsideration, the Rule 11 motion, and the Rule 26(f) motion are reviewed for abuse of discretion, but a court abuses its discretion when it makes an error of law, and the meaning of Rule 26(f) is reviewed *de novo*. The issues, in order of importance:

Whether the district court erred in dismissing my FAC for lack of Article III standing. The court quoted *TransUnion'*s "close relationship" standard and then required my search terms to be tied to my identity, contrary to *In re Facebook, Inc. Internet Tracking Litigation*, which holds that the surreptitious disclosure of a user's search and browsing data to third parties is a concrete intrusion-upon-seclusion injury. My FAC alleges TalentBridge sent the contents of my job searches to Google Analytics and UserWay after I selected "Reject All," with contextual data tying the searches to me.

Whether the district court erred in holding the amount in controversy was not satisfied by treating my pleading of "Counts One Through Sixteen" as a "mere label." Sixteen § 631(a) violations at $5,000 each under § 637.2 is $80,000. That the violation occurred sixteen times is a fact, not a label, and I should not have to restate identical allegations sixteen times.

Whether the district court erred in denying leave to amend as futile and refusing to construe my *pro se* pleading liberally. Futility turned entirely on the erroneous standing ruling; the supposed gap (no exact search terms) is not a pleading requirement; and the court conflated liberal construction of *pro se* pleadings with excusing procedural rules.

Whether the district court erred in denying my motion for protective and corrective relief under its inherent authority (Dkt. 17) as moot upon the filing of the FAC, when the relief was forward-looking and TalentBridge repeated the same misconduct in its next motion.

Whether the district court erred in denying reconsideration and clarification by reasoning that my only remedy for TalentBridge's improper material was to object in an opposition brief — a rule that leaves the court powerless to stop recurring harassment.

Whether the district court erred in denying my Rule 11 motion (Dkt. 34) as moot, when Rule 11 is collateral to the merits and the court could still have granted relief, including "such other relief as the Court deems just and proper."

Whether the district court erred in denying my motion to compel a Rule 26(f) conference on the ground that it had not yet set a scheduling conference, when a scheduling-conference order is not a prerequisite to a Rule 26(f) conference.

7.    Did you present all issues listed in Question 6 to the district court or the BAP? Answer yes or no: Yes.

       If not, why not?

8.    What law supports these issues on appeal? (You may refer to cases and statutes, but you are not required to do so.)

Article III standing (*de novo*). The court quoted the right rule and misapplied it. *TransUnion* holds an intangible injury is concrete when it bears "a close relationship to a harm traditionally recognized as providing a basis for lawsuits in American courts," and expressly lists "intrusion upon seclusion" and "disclosure of private information" as examples. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The test is a close relationship, not an exact match — my injury need not be the tort of intrusion upon seclusion, only closely related to it. The Ninth Circuit has already held this kind of injury qualifies: *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 598–606 (9th Cir. 2020) held that the surreptitious collection and disclosure of users' browsing and search data to third parties states an intrusion-upon-seclusion injury supporting standing, because people have a reasonable expectation of privacy in detailed URLs containing their search terms. My FAC alleges the same — TalentBridge sent my search-bearing URL, carrying the contents of my job searches, to Google Analytics and UserWay contemporaneously with my searches, after I selected "Reject All," with contextual data (browser, device, session, timestamp, referrer) sufficient to associate the search with me. Drawing inferences in my favor, that is a close analogue to both named torts, which is all *TransUnion* requires. *In re Facebook* is binding and forecloses the court's demand that the search terms be "tied to [my] identity"; the

protectable interest is in the search content itself. The district court leaned on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), but *Popa* cuts in my favor. *Popa* affirmed dismissal because the session-replay technology there captured only the plaintiff's clicks, scrolls, and navigation — behavioral observation the panel compared to "a store clerk's observing shoppers" — and disclosed no "embarrassing, invasive, or otherwise private information." *Id.* at 791. My claim is the opposite. I do not complain that TalentBridge watched how I moved around its site; I allege it disclosed the contents of my communications — my search queries about felony-friendly jobs and avoiding background checks — which reveal private, stigmatizing concerns about criminal-history screening of me. That is exactly the "invasive or otherwise private information" *Popa* requires, and it marks the content-versus-conduct line that *In re Facebook* draws: disclosing the substance of a search is actionable, while capturing browsing behavior is not. This Court drew that line in *In re Zynga Privacy Litigation*: basic identification and address information is not "content," but a user's "request to a search engine for specific information" conveyed in a URL is the content of a communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106, 1108–09 (9th Cir. 2014). My search queries are content under that test — the substance of what I communicated — not the record or behavioral data Popa held insufficient. The district court, following *Maghoney*, erred by treating the disclosed content of my searches as if it were nothing more than observation of my conduct. The unpublished district decisions the court relied on (*Maghoney; Byars v. Sterling Jewelers*) cannot override it. The court also wrongly implied a CIPA violation can never be a concrete injury; the narrower and correct rule is that a bare statutory violation is not automatically concrete, but a § 631(a) violation tracking the common-law intrusion and disclosure harms is — exactly what *In re Facebook* holds. Finally, I am not required to plead the exact contents of my communications. *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("there is no requirement that Byars specifically allege the exact contents of her communications with Goodyear. Rather, Byars merely needs to show that the contents were not record information, such as her name and address."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023), motion to certify appeal denied, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) ("to the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position."). If a third party secretly listens to a call between two others, the caller states a wiretap claim without reproducing the call's transcript; demanding my verbatim search strings demands that transcript.

9th Cir. Case No. 25-6713 Page 7

Amount in controversy (*de novo*). The amount alleged controls unless it appears to a legal certainty that the claim is really for less than $75,000. I pleaded sixteen separate § 631(a) violations — Counts One through Sixteen — and § 637.2 fixes damages at $5,000 per violation, so $80,000, over the threshold. "Counts One Through Sixteen" is not a "mere label"; it alleges the violation occurred sixteen times, once per search submission. That something happened sixteen times is a fact. The court's demand that I separately spell out identical elements sixteen times is backwards: if one count suffices, repeating it verbatim adds nothing, and on that logic a plaintiff injured 100 times would have to file a 150-page complaint reciting the same paragraphs 100 times. When an inmate alleges an officer "punched me sixteen times," that pleads sixteen batteries without rewriting the sentence sixteen times. I alleged the number I could verify — sixteen — because the exact count of calls, recipients, and acquisitions is uniquely within TalentBridge's control. At the pleading stage that is enough, and it is not legally certain my recovery is under $75,000. The court also never applied the liberal construction owed my *pro se* pleading.

Leave to amend (*de novo*). Nothing needed amending — the FAC stated a claim and pleaded standing. But even on the court's premise, denial was error. The court found amendment futile only because it had already (wrongly) decided I lack standing; futility falls with that ruling, so reversing it under *In re Facebook* and *TransUnion* defeats futility. The only "gap" the court identified — no exact search terms or identity link — is not a pleading requirement (*Byars; James*; the call analogy), so its absence cannot make amendment futile. The court also held my two "opportunities" and being "on notice" of TalentBridge's first motion against me; that inverts the adversarial process, because a plaintiff may dispute a motion to dismiss and have the court decide who is right, and being on notice of arguments is not the same as those arguments being correct. Leave is freely given when justice requires, Fed. R. Civ. P. 15(a)(2), and denied only where amendment could not possibly cure the deficiency. The court further refused liberal construction, citing *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) — but that case holds only that *pro se* litigants are not excused from procedural rules; it does not abrogate the settled rule that *pro se* pleadings are construed liberally.

Inherent-authority motion was not moot (mootness reviewed *de novo*). A matter is moot only if no effective relief remains. My Dkt. 17 motion did not ask the court to adjudicate the original complaint; it asked the court to use its inherent authority to stop TalentBridge from litigating through stale criminal-history material, "serial litigant"/"extortion" rhetoric, and ten unrelated complaints, and to confine future filings to relevant matter. That relief was prospective and collateral. Filing the

9th Cir. Case No. 25-6713                                                                     Page 8

FAC did not eliminate it — it ensured the conduct would recur, and it did: TalentBridge repeated the same "tester"/serial-litigant attacks in its second motion to dismiss (Dkt. 26). Sanctions and inherent-authority issues are collateral and survive a change in posture.

Reconsideration / "object in your opposition" (abuse of discretion; *de novo* on the legal premise). A court abuses its discretion when it rests on an erroneous view of the law. Telling me the remedy for improper material is to object in an opposition brief guts the court's inherent authority: an objection asks only that the court disregard the material in deciding one motion; it does nothing to stop the same party from repeating the same attacks in the next filing. Inherent authority exists precisely to police recurring bad-faith conduct that ordinary motion practice cannot cure. Treating "object in your opposition" as a complete substitute leaves a court powerless against a pattern of harassment.

Rule 11 motion was not moot (mootness reviewed *de novo*; denial otherwise for abuse of discretion). A Rule 11 motion is collateral to the merits and is not mooted by disposition of the underlying claim; a court may consider it even after the suit is terminated. My Rule 11 motion (Dkt. 34) sought sanctions for TalentBridge's false "extortion" and "serial litigant" accusations and its frivolous arguments. Neither ruling on the motion to dismiss nor closing the case eliminated the court's power to address that conduct, and my motion asked for "such other and further relief as the Court deems just and proper" — relief available regardless of the outcome, including a nonmonetary sanction. Denying it as moot was legal error.

Rule 26(f) conference (abuse of discretion; rule interpretation reviewed *de novo*). A court abuses its discretion when it makes an error of law. Rule 26(f)(1) requires the parties to confer "as soon as practicable — and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." The "21 days before" clause is an outer deadline, not a precondition; nothing makes the court's entry of a scheduling-conference order a prerequisite to the duty to confer. The 1993 Advisory Committee Notes say the conference should occur early, "perhaps before a defendant has answered the complaint," and the court's own Standing Order (Doc. 8 at 5) provides that discovery "shall not be stayed while any motion is pending, including any motion to dismiss." Treating the absence of a scheduling-conference order as the reason the conference could not be compelled read a prerequisite into the Rule that is not there.

9.   **Other Pending Cases.** Do you have any other cases pending in the court of appeals? If so, give the name and docket number of each case.

9th Cir. Case No. 25-6713                                                    Page 9


> *Shah v. JPMorgan Chase Bank, N.A.*, No. 25-6333
> *Shah v. Robinhood Credit, Inc.,* No. 25-6713
> *Shah v. Russco57, LLC,* No. 26-249

**Previous Cases.** Have you filed any previous cases that the court of appeals has decided? If so, give the name and docket number of each case.

*Shah v. Blueground US, Inc.*, No. 23−55799


Dated: June 3, 2026


Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224)246-2874